All right, the court will take the case under advisement and we call our next case, case number 23-1641, Alice Flowers v. Brian Bell. Mr. Glauberman, when you're ready you may approach. Thank you. Mr. Glauberman, you may proceed. Good morning. Good morning. May it please the court, my name is Scott Glauberman. I'm the court-appointed amicus here today on the side of the plaintiff appellant, Alice Marie Flowers. This case began when officers from the Sheriff's Department in Madison County, Indiana, pulled over the plaintiff, Ms. Flowers, in her car. They detained her and they held her long enough for another officer to arrive to serve her with a warrant. A warrant that was, everyone agrees, facially invalid. The warrant was never signed by a judge, it was never approved by a judge. In the place of the judge's signature, as you no doubt saw in our brief, where we reproduced the warrant, there's a large blank space. And the officers in this case have never contended that this warrant had judicial approval. The officer who served the warrant is named Brian Bell. He was at the time a captain in the Sheriff's Department. He was the leader of the other four officers who were defendants in this case. Those are the officers who initially stopped Ms. Flowers. The Sheriff's Merit Board, as a result of the events that we're here about today, found that Captain Bell violated Ms. Flowers' constitutional rights and, as a punishment, suspended him without pay. The District Court, however, in this case, held that Ms. Flowers had no claim against any of the officers, Bell or the other four. The District Court's judgment should be reversed. In our brief, we identify three illegal seizures that took place that day, one after another, to Ms. Flowers. Those were the stop, the detention, and the warrantless seizure of the phone. I'd like to start with the third, if I could, the warrantless seizure of the phone, because it naturally brings up the other two. To recall, the other officers stopped Ms. Flowers, held her for ten minutes, waited for Captain Bell to arrive, and, as planned, as he had arranged the day before, he then went to the scene and served her with this warrant, this invalid warrant. When he walked up to her truck, he told her, they stopped you because I told them to stop you. I have a warrant for your phone. Ms. Flowers objected, said that she didn't want to turn over her phone, and Captain Bell grabbed it. In his summary judgment motion, Bell's only argument to justify the warrantless search was the Plainview Doctrine. He relied entirely on it. That doctrine has three elements. Captain Bell cannot establish two of the three elements. The first of those is that he cannot have achieved Plainview of the item at issue, the item seized, via violations of the Fourth Amendment. That comes from a Supreme Court decision in 1990 called Horton. It's been in other decisions. It's been in this Court's decisions. It's very well established. Here, Bell's seizure of the phone was due to three different violations of the Fourth Amendment. The first of those was the stop, the illegal stop. There was no valid reason for that stop. Did the officers, though, represent that they stopped for registration on the vehicle? That's correct, Your Honor, but there's no admissible evidence that shows that. There was no ticket to Ms. Flowers. There was no warning to Ms. Flowers. There was no testimony in the District Court that that is, in fact, what happened. All we have in the District Court on that subject is Bell repeating what another officer told him. And they're allowed to rely on what other officers tell you during an investigation. Isn't that correct? You can rely on it, certainly, but you can't in the course of doing the investigation. But you can't win summary judgment based on repeating what someone else said they saw. I just want to make sure the representation is correct. So that is the evidence, though? That was in the record that Captain Bell relayed to the district judge what he had learned from the other officers? He said, I heard from Officer Saylor that they pulled her over for some reason related to her license plate of registration. So there was no report prepared by those officers that would substantiate that other than Captain Bell's report? Well, the statement we're talking about now comes from his affidavit in support of summary judgment. That's what I'm asking. He did have reports, police reports. The other two that conducted the stop, there were no reports? No, not that I'm aware of. That's what I want to make sure. Not that I could see in the record. Okay. The reason that he gave in his reports and in his affidavit reflects a shifting explanation. In addition to being maybe because it's hearsay, it changes over time. In his March 2 report, he said she was pulled over for driving without a registration. The car wasn't registered. In summary judgment affidavit, he said she didn't have a visible Indiana registration. And in his brief to this court, his opening brief to this court, he said her license plate was not visible. So the explanation has changed over time. But in any event, has always come from just one source. That source is Officer Saylor. The only admissible evidence before the district court about why she had been pulled over was his statement, Bell's statement. Two missed flowers captured on videotape, which is in the district court's possession, where he says, they stopped you because I told them to stop you. I have a warrant for your phone. The warrant, which as we all know turned out to be invalid, was the reason for the stop. Bell had planned that earlier. He had planned it the day before. In his report, I think it's his February 26 report, he recorded that he preferred not to serve the warrant at her home or at her business. He wanted to do it while she was in a car. And therefore, that's in fact how they did it. The entire purpose of this exercise was to serve the warrant. And there was no admissible evidence that it was done for another reason. Getting back to what's in the record, is there anything in the record from Miss Flowers representing that her registration or license plate was visible? Is there anything at all? I don't recall any statement on that subject off the top of my head. But of course, it's not her job to disprove it. It's their job to show that that was the reason for the stop. That in fact, they had probable cause for a traffic stop based on admissible evidence. And that they completely failed to do. But for her to survive summary judgment, I believe that's where Judge Maldonado was going. She has to show that there is a material issue of fact in order to survive summary judgment. And if the representation made by the officers is that we had reasonable suspicion to stop her and that being some type of vehicle violation, then the purpose, even if it was to serve the warrant, case law is clear that we don't consider that as long as there's reasonable suspicion. So, with the question really drilling down to did Miss Flowers contest that the officers had reasonable suspicion? That the reason that they gave should not be relied on by the district court? Well, to that I would say two things, Your Honor. The first is I think it's an important distinction about whether the officer's evidence was admissible. Because this court has held many times you can't get summary judgment based on inadmissible evidence. Summary judgment is, in effect, a stand-in for the trial. And you can't win it based on evidence you can't present at trial. And that's all the officers had here. The second thing is, I do recall Miss Flowers... There's nothing, though, to suggest that that affidavit relied on by the district court was a sham affidavit. That's kind of the argument, if we pull that thread a little bit. I'm sorry, I'm not sure what you mean by a sham affidavit. Suggesting that what Captain Bell represented in his affidavit, that the officers had reasonable suspicion to stop her. That that was not contested below. Well, it was contested in the sense that I do recall Miss Flowers filing papers that said that at the scene she told Saylor, the officer we're talking about, that she did have proper registration. And, of course, she kept the registration papers in her car. So I do recall her saying that in particular. And that was in response to the motion to dismiss. Was anything filed in response to the motion for summary judgment? I don't recall off the top of my head where she made that statement or if she made it more than once.  But, Your Honor... No, finish. I was just going to say, I do think the point stands that the officers need... Well, Bell needed admissible evidence and didn't have it. And his story changed over time. It was not a consistent story about why she'd been pulled over. Moving to the next step in the record, I think it's probably what you were referring to as the over-detention. Is it clear from the record that this isn't the type of case where there's a drug dog sitting right by and the stop isn't elongated? The stop is elongated specifically so that Bell can show up. Is that correct? That's correct. There is videotape of this, as I mentioned a short while ago. And Bell's records state that there was 10 minutes in between the stop and when he, Bell, arrived on the scene. The videotape shows approximately the last 8 minutes of those 10. And we know Ms. Flowers received no ticket or warning. We know from the videotape that there is no activity related to a traffic stop about a plate or registration. Everyone is just sitting around waiting. Ms. Flowers asks if she can leave, if she's free to go. The response is not audible, but it's evidently, no, she's not free to go, because her next question is, why, what crime am I being detained for? Again, the response is inaudible. But we know she was compelled to sit and wait for 10 minutes with apparently no other activity, waiting for the officer to arrive, for Bell to arrive. In pulling that thread, if that's the independent constitutional violation and also goes to invalidate any claim under the plain view doctrine, you were appointed. We appreciate your service as amicus. But has Ms. Flowers put that at issue? Under party presentation principles, could we reverse based on that line of argument? She did put it at issue. In her initial complaint, the one, the pro se complaint that started the entire case, she complained about the officers falsely imprisoning her, falsely keeping her and not letting her leave. And she certainly elaborated on that in other filings that she made, including in an attempted amendment to the complaint a few weeks after the motion to dismiss was filed. I don't think there's any doubt she has consistently complained that they wouldn't let her leave. And it's backed up by the videotape of the scene. If the court has other questions, I'm happy to answer them. Otherwise, I'll reserve the remainder of my time. Thank you. Thank you. Thank you. Good morning. My name is Alex Emerson. I represent Brian Bell on this appeal. Brian Bell, as counsel told you, executed an unsigned warrant and seized her phone during a traffic stop. Are we accepting that the warrant was invalid? Absolutely. All right. And so that's part of the situation is you're not going to hear me say, and I don't think you'll hear even Captain Bell say, that his police work that day was good. He served an unsigned warrant. He had to take his medicine for that. And he was suspended by his boss, Sheriff Mellinger, for two days for that. Notwithstanding that suspension and the service. How do we get to the arguments that were raised this morning? Sure. In regards to whether or not any of these arguments have been waived. Yes, Your Honor, they have. And I am cognizant of the Seventh Circuit's admonition to district courts with respect to pro se pleadings. But I think one important fact, one important legal aspect of this, is by the time we got to the summary judgment motion, the claims had been narrowed solely to Brian Bell's seizure of the phone. Now, in the briefing, there was an issue with respect to, brought by counsel, as to whether or not we're talking about both the seizure, which was, and I think Bell's interaction was about two minutes with Ms. Flowers, as seizure of her person, excuse me, in addition to the seizure of the phone. But in any event, it's Bell's conduct that's at issue with respect to the motion for summary judgment. But for him to be legally present under the Plain View Doctrine, he had to be legally there. And so are you suggesting that the traffic stop, whether or not the traffic stop was delayed longer than reasonable to where it became an unreasonable seizure, is not at issue? Not at summary judgment, Your Honor. No, I don't believe so. There was a motion to dismiss that was filed. And so are you suggesting that she did not appeal the judge's decision in regards to the motion to dismiss? It's a little bit unclear, Your Honor. With respect to the notice of appeal, she only attached, as the appeal to order, the order on the summary judgment. In her initial brief, she makes a single sentence, saying that the district court erred in dismissing the other defendants at the motion to dismiss stage. So, yes, I believe that that was an issue. And with respect to, excuse me, I believe that she waived the issue by not indicating that she is actually appealing the dismissal of the other officers, and she fails to present any sort of coherent argument that actually discusses the actual order on the motion to dismiss. So, what we're looking at here is the order on the summary judgment proceeding. But I think we still have to, we really have to drill down on Step 1 of the Plain View Doctrine, and that's where counsel spent primarily all of their time this morning as to whether or not Captain Bell was lawfully present at the traffic stop. And so the only way, or the suggestion is the only way that we can answer that is if we can determine whether or not the traffic stop was delayed unlawfully. Understood. Understood, Your Honor. I don't know that Ms. Flowers has ever asserted with respect to the unlawful length of the detention. And once we start talking about the Plain View Doctrine, Brian Bell's interaction where he pulled in front of her, which is the moment that she identified in the complaint as not being able to leave, as being seized, from that moment, it's about a minute and a half to two minutes, where he walks up, they have a discussion, and he snatches the Plain View. Our case law is clear. The Supreme Court has directed us that you don't have to, during a traffic stop, stick out the Constitution for the law enforcement officer to know when the traffic stop, the mission of the traffic stop is concluded. So let's directly back to the question of whether or not the traffic stop was unlawfully prolonged. It's not up to Ms. Flowers to suggest that you are violating my constitutional rights. And so was the mission of the stop concluded before Captain Bell arrived? If the sole mission is a traffic violation with respect to the license plate, yes. We have problems with respect to the seizure because the video shows that they don't take action, whether it's approaching the vehicle, whether it's writing a ticket, whether it's writing a warning. The officers don't take that step. And so if the reliance is on that license plate, yes, there are problems with the other officers' seizure of Ms. Flowers. I will agree with that. Now, with respect to whether Brian Bell, whether her seizure for the purpose of seizing the phone was improper, I do not agree with that. I think that it was proper. And I think the reason that we can give is because at the end of the day, what we're looking for is probable cause to believe that Ms. Flowers had evidence that could aid in a conviction. And that essentially has been unchallenged. And once you have probable cause, not only in this context, but in many other contexts. So are you suggesting that the approaching of Captain Bell was attenuated from the illegal activity of the other two officers? Pardon me, Your Honor. Are you suggesting that once Captain Bell arrived, that his arrival is attenuated enough that it's not tainting his presence of being at the traffic stop? There's enough time in between? I'm afraid I don't understand. I'm trying to disconnect why we're able to address Captain Bell's appearance at a traffic stop that you have accepted this morning that was unlawful. So I'm just trying to make sure that I appreciate the legal bridge. Understood. I think Brian Bell and any law enforcement officer has the inherent power to detain an individual for achieving whatever the purposes of that legal stop ends up being. So we're talking about a cell phone here. And the Supreme Court has ad nauseum talked about what that means and how many people have just a significant amount of information in their cell phone. Wouldn't your argument essentially mean that anyone who is even a bystander witness to a crime and has a cell phone on them can be stopped and seized by the police so the police could get that cell phone? Yes, I believe that the Supreme Court law would say if there is probable cause to believe that that has evidence of a crime that could aid in a conviction, the phrase is aid in apprehension or aid in a conviction, then yes. Assuming that the officer can meet the other elements of the plain view doctrine, then a seizure of that cell phone would be appropriate. We don't get to the plain view doctrine yet because you're stopping someone to get to the phone. I understand that, Your Honor. And there is the elephant in the room is the fact that at all times he believed that there was a lawful search warrant here, and we didn't have that. And so it is a little bit of a timing issue, if you will, because at the time that the other officers pulled behind flowers and put on the lights, there was no lawful valid warrant in existence. Now, they might not have known that at that time, but there wasn't. So once Bell gets there, though, I think we're in the clear, so to speak. That's what we're trying to get you to talk us through. Why are we in the clear? Because if Bell can show that there's probable cause for the seizure of the phone, probable cause to believe that the phone contains evidence of a crime. But he hasn't – at the time that he arrives, she is being unlawfully seized. Well, with respect to if the purpose of the stop is to seize her phone, then no, I don't believe that she is being unlawfully stopped. They didn't have probable cause to stop her car for seizure of a phone. I think, Your Honor, it would be reasonable to believe that she has a phone. She has her own phone on her person at the time of the stop. Reasonable suspicion for a traffic stop and probable cause for a search. That's two different levels of suspicion that is needed. And so the suggestion below was that there was reasonable suspicion for a traffic stop. Now you're suggesting that they needed or they had probable cause to stop that vehicle because it was trafficking a cell phone. And so this is the first time I'm hearing that the suggestion is there was probable cause to stop that vehicle to search for criminal activity afoot. Is that what you're suggesting this morning? No, Your Honor. No, if that's how that came out, that's not my intention at all to say that they had probable cause to pull her over and search her vehicle. You only need reasonable suspicion for a traffic stop. Correct, Your Honor. Yes. I agree. And so you suggested just a moment ago when they stopped that vehicle they had probable cause that she had her phone with her. The probable cause reference goes to what is required to effectuate a warrantless seizure of an item. But in order for it to effectuate a warrantless seizure of an item, plain view exception, the first step is that the officer has to be lawfully present. And so we're trying to get over the first hurdle. Why is the officer lawfully present? And then we can get to Judge Kolar's question in regards to whether or not law enforcement officers have probable cause to seize everyone's cell phone in the courtroom. Yes. First, with respect to the question as to whether they whether Brian Bell was lawfully there at the moment at the time of the seizure. Yes. And the reason is, as set out in the briefing, the main focus of Fourth Amendment jurisprudence with respect to this, the plain view, it is not, I will argue with counsel, it is not whether they violated the Fourth Amendment in achieving that location. It's whether or not they can physically be in the location. And the cases cited in the briefing talk about whether or not the officers properly went into someone's house, which has heightened requirements, heightened concerns from a constitutional perspective. This occurred on a public street. And Brian Bell, in driving to the location of the traffic stop, did not do anything, did not put himself in a physical location where he wasn't allowed to be with respect to the Fourth Amendment. The car wouldn't be there unless she was unlawfully seized. I understand that the seizure, if it's solely based on that license plate issue, then yes, I agree with you. So when she asked the question in her complaint, you're unlawfully seizing me. What other reason is that car still there lawfully when Captain Bell arrives? Captain Bell has the inherent law enforcement power to briefly detain somebody to effectuate a seizure based on probable cause. I might be repeating what Judge Pryor is getting at here, but it seems to me like what you're saying is law enforcement could wait until someone is out of their house, detain them, and without a warrant, take their cell phone. And we've got Bradley v. California. I mean, it's not just is the law enforcement officer in a public place where the law enforcement officer is allowed to be. You have a detention. You have an over-detention that made the person whose cell phone Bell was seeking be in that location. I don't know what the limiting principle of your argument would be. I understand. I think, as I said, if we're talking about the detention, just in the scope of the registration of the license plate, we have problems, certainly. But if we're talking about the detention for the purpose of seizing the cell phone, then I don't think there's any evidence in the record that Captain Bell delayed or improperly prolonged that aspect as it's set forth in this. Counsel from the other side said that she was sitting there for eight minutes waiting for Captain Bell to arrive, and she said, Can I go? Can I leave? So that's what we have in the record. Her asking, in essence, unartfully, of course, because she's not a lawyer, Are you unlawfully detaining me? Why am I still here? Yes, Your Honor. I believe that eight minutes is reasonable to radio to Captain Bell and have Captain Bell report to the traffic stop. He's on patrol in the city of Anderson. We at the Supreme Court, though, has directed us that once the mission of a traffic stop is done, you must release the driver. I understand, Your Honor. And so I understand radioing and telling Captain Bell she has been stopped. What part of the traffic stop was still happening during those remaining eight minutes until he arrived? I think that the actual fact of the matter is that they believe that he was coming with a ballot warrant. So nothing in regards to the traffic stop? Well, ultimately, the end result is the same. The seizure of the cell phone based on the— No, it's not the same. Is there anything else in regards to the mission of the traffic stop after the first two minutes? Other than simply waiting for Captain Bell to arrive, no.  Thank you, Your Honor. Thank you. With the Court's permission, I'd like to briefly address two topics in my remaining time. The first is whether any of the claims here should be held to be waived because they weren't presented. I think the answer to that is no. I do believe that the issues raised in our brief, filed after the parties filed their briefs, are all fairly raised, especially given that Ms. Flowers is a pro se litigant. And even to the extent there are not— What would you direct us to in the record to demonstrate that the question of whether or not she was unreasonably detained was raised below? Well, I'd point you first to her complaint where she said she was falsely imprisoned by the officers. I think that alone establishes exactly what she's talked about. But if you like, Your Honor, I'd be happy to file a supplement afterwards that explains exactly where in the record each of those mentions comes up with that particular issue. Counsel, I'm also concerned, was it raised in her appeal? She appealed the judgment, Your Honor. And she did it as a pro se litigant. And she does mention it in her brief, in one of her briefs in this court. And I think for a pro se litigant, especially one where this court's appointed— She raises—what do you mean? She raises what? You said she raises— I believe she raises the detention. The detention. And for a pro se litigant, especially one whom the court has now appointed a lawyer to come in and more fully explain, I think that's enough. I think that does do the job for her. But this court also has plain error review. Even if things were not raised as fully as the court thinks they should have been, there is plain error review. And some of the errors here—in fact, I think all of the errors here were very plain. I'll give one example because time is very short. You're out of time, counsel. May I finish? You may. Thank you. In the dismissal order, the district court held the other officers were not responsible for the initial stop. They were merely present at the scene when Bell stopped her. That is factually wrong. Everyone knows that's wrong. Bell agrees that's wrong. But then in the summary judgment ruling, the district court said Bell could not be responsible for the stop. It was the other officers who did it. So everybody got out on the stop on the grounds that everybody else did it, but they didn't do it. Bell was responsible for the stop not because he was present, but because he directed it. It was his plan to have them stop her, and that's what he did. If there are no other questions, Your Honor, we'd ask for reversal of the judgment. Thank you, counsel. And thank you to both counsel, and particularly to Winston Strom. We know that you were appointed because on this, so we appreciate your service to the court. Thank you. If I could, I'd like to add my thanks to my colleagues, Brent Winflow and James Randall, who worked closely with me on it. Thank you. Thank you. All right. We will take questions.